RICHARD D. SCHRAMM (SBN 151696)
ADAM S. JURATOVAC (SBN 295763)
EMPLOYMENT RIGHTS ATTORNEYS
1500 East Hamilton Ave., Ste. 118
Campbell, CA 95008
Tel: (408) 796-7551
Fax: (408) 796-7368

Attorneys for Plaintiff, Andrew Mattioda

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW MATTIODA, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| JIM BRIDENSTINE, in his official capacity as Administrator, National Aeronautics and Space Administration; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, an Agency of the United States, | DEMAND FOR JURY TRIAL |
| Defendant. | |

COMES NOW plaintiff ANDREW MATTIODA and alleges as follows:

**PARTIES**

1. ANDREW MATTIODA ("MATTIODA") is a resident of Santa Clara County, California. At all times relevant herein, MATTIODA was engaged in employment in Santa Clara County, California. At all times relevant herein, MATTIODA was an employee protected by the provisions of the Rehabilitation Act of 1973, as amended.

2. Defendant JIM BRIDENSTINE, is Acting Administrator of National Aeronautics and Space Administration. He is sued in his official capacity.

3. Defendant NATIONAL AERONAUTICS AND SPACE ADMINISTRATION ("NASA") is a federal agency that was created by the National Aeronautics and Space Act of 1958 as a purely civilian agency. Pub. L. 85-568, § 102, 72 Stat. 433.

## JURISDICTION

4. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. 1331. Jurisdiction is proper because this is an action arising under the laws of United States, specifically, Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

## VENUE

5. Venue in the above entitled court is proper pursuant to 28 U.S.C. §1391 (b) and (d) because the injuries and damages suffered by MATTIODA were the result of actions and/or inactions of defendant that occurred in Santa Clara County, California, and NASA maintained an operation in Santa Clara County at all times relevant.

## GENERAL ALLEGATIONS

6. NASA hired MATTIODA in 2000 as a Post-Doctoral Student. NASA Ames Research Center ("AMES") used MATTIODA's expertise as a contractor beginning in 2004. AMES hired MATTIODA into his current position as a Space and Planetary Scientist with the Planetary Science Branch ("SST"), Space Science and Astrobiology Division ("SS"), Science Directorate ("S"), AMES, located at Moffett Field, California in August 2007.

7. MATTIODA was diagnosed with Femoral Acetabular Impingement ("FAI") in or about 2007, a degenerative defect disability in the hips which leads to arthritis and loss of hip function. He underwent hip surgery on his right hip in 2009, and twice in 2012. MATTIODA has the same FAI issue with his left hip, but he has not had surgery on his left hip. On or around 1984, MATTIODA was diagnosed with Scheuermann's disease of his spine, which causes the vertebrae to grow unevenly and causes scoliosis of the spine. MATTIODA has also suffered from ongoing on life-long ear infections. MATTIODA has had multiple orthopedic treatments and surgeries, so that he has both multiple physical disabilities and a history of such disabilities. These disabling conditions have imposed substantial limits on one or more major life activities including walking, standing, sleeping, and moving throughout MATTIODA's employment, so that he is a person with a disability within the meaning of the

Rehabilitation Act.

8. Sometime around Spring 2017, Dr. Tim Lee ("Dr. Lee") stepped down from the SS Division Branch Chief position. MATTIODA had filed prior EEO Complaints against Defendant and named Dr. Lee in his complaints. MATTIODA had brought numerous notices to Defendant about his disabilities and history of disabilities, so that Defendant was well aware of MATTIODA's disability status before 2017. Despite MATTIODA's prior EEO and harassment complaints against Dr. Lee, when Dr. Lee stepped down from his Branch Chief position, NASA assigned Dr. Lee to work in the Planetary Sciences Branch, alongside MATTIODA. Dr. Lee then used about $3,000 of Division funds to redecorate his new office, despite Defendant and Dr. Lee having previously told MATTIODA the Agency lacked funds to pay for MATTIODA's reasonable accommodation requests.

9. On April 10, 2017, Dr. Lee downgraded MATTIODA's role in the Ames PAHdb section. Dr. Lee then directed Dr. Christiaan Boersma ("Dr. Boersma") (who was supposed to be working with and for MATTIODA) to report to three other persons instead of solely to MATTIODA.

10. On April 11, 2017, MATTIODA sent Dr. Lee an e-mail detailing the discrimination and harassment he had endured from Dr. Lee since February 2017. Dr. Lee responded saying that he did not agree with the stated facts, and, "I [Dr. Lee] have better things to do than rehash history."

11. On April 11, 2017, MATTIODA exchanged emails with Dr. Steve Howell ("Dr. Howell"), requesting a meeting. In response, Dr. Howell responded, "If you are having an issue with Tim [Dr. Lee] and the WP [Lab Astro WP] formulation, I'd suggest you take [sic] to him. Next step is to talk to your branch chief." MATTIODA then provided Dr. Howell a high level overview of the years of discrimination and retaliation experiences involving Dr. Lee. MATTIODA said Dr. Lee's stripping authority for the Lab Astro WP formulation was a continuation of the harassment. When MATTIODA cited examples about Dr. Lee's shunning and excluding MATTIODA from certain critical meetings, Dr. Howell admitted, "Yeah, that was kinda weird." MATTIODA also commented he had heard Dr. Lee made several derogatory comments about MATTIODA that included the false comments that MATTIODA was a "troublemaker," and had been transferred to SST because he could not get along with SSA management. Dr. Howell did not offer to pass this information onward so that NASA could start a discrimination or harassment investigation.

12. On May 10, 2017, Mr. Mark Fonda ("Dr. Fonda") asked Dr. Lee's opinion about involving MATTIODA in a Lab Astro Tour. Dr. Lee responded, "Not Andy." Other than a retaliatory motive, Dr. Lee had no other reason to deny this tour opportunity to MATTIODA.

13. On June 5, 2017, Defendant announced a job opening for Senior Scientist, Laboratory Astrophysics Position, with a closing date of June 30, 2017. Before the announcement, AMES Director Dr. Eugene Tu ("Dr. Tu") had stated in a November 19, 2016 email that, "I think we need to take a look at the diversity of our ST [Senior Technical] positions." Knowing that Defendant had expressed an interested in a "diversity" based candidate for future Sr. Technical positions, MATTIODA was extremely interested in the position, and was the only known scientist with the diversity characteristic of a disability background.

14. On June 15, 2017, MATTIODA reported to Dr. Michael Bicay ("Dr. Bicay"), the false and derogatory comments Dr. Lee had made about MATTIODA being a "trouble maker" and having issues with others in the department. MATTIODA also told Dr. Bicay he was still being harassed by Dr. Lee. MATTIODA also confirmed speaking with Dr. Howell about these issues on April 11, 2017. Dr. Bicay said he would speak with Dr. Howell about these concerns and "get back" to MATTIODA.

15. On June 23, 2017, Dr. Bicay forwarded an e-mail to MATTIODA confirming only one person had applied for the Sr. Technical Scientist position, but that person was "outside the area of consideration." The e-mail also asked if the Agency wanted to "extend the vacancy, if needed," so additional applicants could submit their names.

16. On June 30, 2017, MATTIODA submitted his application for the Senior Scientist, Laboratory Astrophysics position (ST position). MATTIODA listed his disabilities on his profile page to ensure that Defendant knew he was a "diversity" candidate. MATTIODA confirmed he wanted consideration under Schedule A hiring, i.e., preferential hiring for certain classes of applicants.

17. On July 10, 2017, Dr. Lee told Dr. Steve Zornetzer ("Dr. Zornetzer") about MATTIODA's EEO and harassment complaints. As of June 2017, NASA had assigned Dr. Lee to be on the hiring panel ("ST Panel") selecting the person filling the Sr. Technical Scientist position. Defendant assigned Dr. Lee to this panel, which had accepted MATTIODA's application, despite the fact that Dr. Lee was the person against whom MATTIODA had filed prior EEO complaints.

18. In that July 10, 2017 meeting, Dr. Lee spoke with the other hiring panel members about MATTIODA. For whatever reason, and in violation of both procedures and custom, all the members of the ST Panel either destroyed, or removed, their notes taken from that meeting, thus creating a spoliation of the evidence. About one month after making these comments about MATTIODA and other potential candidates to the hiring panel, Dr. Lee recused himself from serving on the ST Panel. Dr. Jaya Bajpayee ("Dr. Bajpayee") replaced him. MATTIODA believes based on the other circumstances surrounding the selection process, that Dr. Lee communicated with others during this one month period of activity.

19. The Sr. Technical Position job announcement stated that the qualified candidate would (1) conduct individual research in laboratory astrophysics, astrochemistry, and astrobiology; (2) provide intellectual leadership to scientists conducting new laboratory astrophysics, astrochemistry, and astrobiology experiments; (3) assist the Division Chief in developing new programs; and (4) assist the Division Chief to enhance the technical quality and stature of the Division's programs. The announcement said nothing about desired "deep space" mission experience, only "mission experience." The announcement said nothing about "h-index" as a desirable qualifying factor.

20. MATTIODA realized he was one of, if not the most, qualified candidate for the Sr. Technical Position. MATTIODA had the most experience covering the areas of cubesats, International Space Station, and smallsats, all of which were part of the "space mission" experience listed as desired for the position. No other scientist in the Agency had qualifications that exceeded his. If the ST position focused on realignment with NASA HQ, MATTIODA was also the most qualified to fill the ST position for that future function.

21. Between June 30 and July 18, 2017, Dr. Max Bernstein sent an e-mail to the ST panel or specific panel members indicating the overall rating in his evaluation spreadsheet was "not" the average of the scores. Dr. Bernstein "adjusted" the ratings in the evaluation spreadsheet to emphasize certain evaluation criteria that benefitted Dr. Scott Sandford (Dr. Sandford"), specifically, Evaluation Criteria 2 for the ST position. In doing so, Dr. Bernstein de-emphasized the evaluation criteria that benefitted MATTIODA. Dr. Bernstein had been aware of MATTIODA's prior EEO complaints related to disability discrimination and disability harassment.

22. The ST Panel specifically elected not to interview MATTIODA for the Sr. Technical

1  Scientist position. The ST Panel provided no reason for not interviewing MATTIODA, when in the
2  past, such interviews were common for final qualified candidates.

3        23.    Two of the three panel members knew of MATTIODA's EEO activities and prior
4  complaints, as did the panel chair. Significant differences occurred in the ratings given to MATTIODA
5  by the various panel members. This significant disparity corresponds to each person's knowledge of,
6  and opinion of, MATTIODA's prior EEO activity. One panel member, Dr. Bajpayee, who had no
7  knowledge of MATTIODA's EEO activity, rated MATTIODA 200 to 400% higher than either
8  Mr. Fonda, or Dr. Bernstein, both of whom were aware of the prior discrimination and harassment
9  complaints.

10       24.    On July 25, 2017, the ST Panel announced that "only Dr. Scott Sandford" was "highly
11 selectable" for this position. Based on the scores of the non-biased panel members, MATTIODA was
12 also rated as "highly qualified." Additionally, MATTIODA had Schedule 1 disability status for the
13 interview process, and was within a preferential hiring category, whereas Dr. Sandford was not.

14       25.    On August 8, 2017, Dr. Zornetzer told MATTIODA that he was one of three candidates
15 reviewed for the ST position, but the ST Panel had not selected MATTIODA. Dr. Zornetzer said the
16 two main reasons for MATTIODA not being selected were: (1) MATTIODA's lower h-index score, and
17 (2) MATTIODA's lack of "deep space" mission experience. Again, both the h-index score and deep
18 space mission experience were never listed as requisite qualifications in the ST position announcement.
19 The ST position was a Laboratory Astrophysics position, not a mission position. Deep space mission
20 experience would have been irrelevant to this ST position. Dr. Zornetzer's proffered explanation on
21 behalf of the ST Panel was unworthy of credence because it is internally inconsistent with the objective
22 criteria already established prior to the selection.

23       26.    Dr. Zornetzer also said he relied on the three senior-level astrophysicists on the panel for
24 their interpretation of each candidate's "h-index" data. In several prior private conversations before he
25 recused himself, Dr. Lee had mentioned his opinions about the importance of an "h-index" for scientists.
26 The h-index roughly measures the number of publications produced by a particular scientist over the
27 years, and that number is directly affected by (1) the number of years of publishing, (2) the number of
28 post-doctoral researchers assigned to a scientist, and (3) the number of projects approved by NASA for

its scientists. In comparison to Dr. Sandford, MATTIODA had fewer years as a researcher at NASA, had fewer active months as a researcher (because of his disabilities), had fewer publications via post-doctoral candidates (because NASA discriminatorily restricted his number of post-doctoral candidates), and had fewer approved research projects. As a net result of Defendant's past discrimination against MATTIODA, and its decision to use factors never listed in the job announcement, and its decision to define the two critical factors as those which Dr. Sandford naturally had the greater of, NASA manipulated the ST Position hiring process against MATTIODA.

27. Within 45 days, MATTIODA contacted an EEO counselor and made his informal complaint about the ST Position non-selection. After this timely informal charge, MATTIODA followed with a timely formal charge of discrimination, and permitted the agency to engage in more than 180 days of investigation before bringing this matter to court. As a result, MATTIODA has exhausted all administrative remedies needed to timely bring this complaint against Defendant, including MATTIODA's complaint that the retaliation was on-going and included the ST Position.

28. On December 13, 2017, Dr. Bicay admitted to MATTIODA that Dr. Bicay wanted the ST position (Dr. Sandford) to assist in negotiating new hires for the group in addition to assisting with obtaining direct funding from NASA Headquarters. MATTIODA and Dr. Farid Salama had vast experience with these two functions. In contract, for some 10 years, Dr. Sandford had not had a relationship with, nor had he even worked with, the Astrophysics Program at NASA Headquarters. This admission was yet other evidence that NASA's rationale for not selecting MATTIODA for the ST position was unworthy of credence because it was internally inconsistent.

29. On April 18, 2018, an announcement was posted for a vacant position in the Astrophysics and Astrochemistry Laboratory group. MATTIODA volunteered to serve on the selection/rating panel. On April 30, 2018, during a meeting with Dr. Jeff Hollingsworth, MATTIODA told Dr. Hollingsworth that he felt like Dr. Howell had blacklisted MATTIODA due to his disabilities and prior protected activities. MATTIODA also told Dr. Hollingsworth that he had volunteered to be on the selection committee for the new Laboratory Astrophysics position, but had not been selected for that committee.

30. On or about June 29, 2018, MATTIODA learned NASA had hired a new Astrophysics and Astrochemistry Laboratory hire. MATTIODA was not consulted regarding the new hire.

MATTIODA was the only potential "unbiased" Astrophysics evaluator as the two other evaluators both had their own researcher candidates applying for the job. Again, NASA retaliated against MATTIODA by excluding him from an assignment wherein he was the only obvious, nonbiased selecting official.

31.  During 2018 MATTIODA worked months on the team's 2018 version of the Lab Astro WP. MATTIODA was a senior member of that package. On July 3, 2018, Dr. Howell announced Dr. Ella Sciamma O'Brien ("Dr. Sciamma O'Brien") would be the point of contact for the work package. NASA's selection was in direct contradiction to Dr. Bicay's prior statement that MATTIODA was to participate in the "leadership and vision" for the future of the Astrophysics program. The selection was yet another form of ongoing retaliation.

32.  On August 1, 2018, Dr. Howell led a SS Division panel meeting to review potential NPP postdoctoral candidates. For MATTIODA's proposed NPP candidate, Dr. Howell asked him aggressive and interrogation-like questions regarding that candidate. Dr. Howell did not ask these same aggressive and interrogation-like questions of the other scientists with proposed candidates. But for MATTIODA's disability and prior EEO complaints, Dr. Howell would not have treated MATTIODA in this manner.

33.  On August 17, 2018, MATTIODA was informed that his NPP postdoctoral applicant was not selected in this round of applications. The reasons listed for not selecting MATTIODA's candidate mirrored Dr. Howell's comments given during his aggressive questioning of MATTIODA. Dr. Howell controlled whether MATTIODA's NPP candidate was selected, and this non-selection was yet another form of reprisal / retaliation.

34.  On October 26, 2018, when MATTIODA was moving an item in the lab, Dr. Salama yelled out to him, "Watch it. Don't hurt your back, I know you have back issues." MATTIODA had never told Dr. Salama about his back disability issues, so Defendant must have disclosed confidential information about his hips, back, and accommodations without MATTIODA's permission.

35.  On March 19, 2019, Ms. Kim Dufour, representative for USJobs website, told MATTIODA that when the ST Position was being evaluated in late 2017, NASA had never requested disability status information from that USJOBS system. Despite the 2017 vacancy announcement having stated the position was open to candidates with disabilities, NASA never requested the disability status for any candidates. NASA apparently never intended to promote anyone with a disability, or in

accord with Schedule-A preference, or in accord with the prior recommendations for "diversity."

## COUNT ONE

## Disability Discrimination and Harassment

## THE REHABILITATION ACT OF 1973:  SECTION 501

36. MATTIODA realleges and incorporates by reference the allegations of the prior paragraphs.

37. The adverse actions, omissions and ongoing conduct against MATTIODA as alleged above, including but not limited to intentional acts described herein, failing to interview plaintiff for the ST position, failing to treat plaintiff in the same manner as non-disabled employees, continuously and pervasively harassing MATTIODA over many years (including with respect to subjecting MATTIODA to additional requirements, and disclosing personal and private information), and directing adverse treatment against him because of his disability conditions, constitute discrimination and harassment because of disability in violation of Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

38. The adverse actions, omissions and conduct alleged herein by the Defendant's employees and agents were committed within the scope of their employment, agency or other similar relationship and were all ratified by the governmental agency Defendant.  The adverse actions, omissions and conduct alleged herein by the Defendant's employees and agents based on MATTIODA's disabilities was continuous and pervasive.

39. As a result of the wrongful actions, omissions and conduct by Defendant, MATTIODA has suffered a deprivation of equal employment opportunities; damages including wage loss, emotional pain, loss of self-esteem, grief, stress, anxiety, stigma, humiliation, mental anguish, and loss of enjoyment of life in an amount to be proven at trial.

WHEREFORE, MATTIODA prays for judgment as set forth below.

//
//
//
//

## COUNT TWO

### Reprisal

### THE REHABILITATION ACT OF 1973: SECTION 501

40. MATTIODA realleges and incorporates by reference the allegations of the prior paragraphs.

41. The adverse actions, omissions and conduct against MATTIODA as alleged above, including but not limited to intentional acts described herein, failing to treat plaintiff in the same manner as non-disabled employees, continuously and pervasively harassing MATTIODA over many years, and directing adverse treatment against him were effected in part because of MATTIODA's objections to illegal discrimination and harassment, including his demands for reasonable accommodation and funding, and filing of EEO complaints, and therefore violate Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. The reprisal included Defendant's discussions about MATTIODA's complaints, his medical disabilities, and making negative statements about his work at NASA.

42. The adverse actions, omissions and conduct alleged herein by the Defendant's employees and agents were committed within the scope of their employment, agency or other similar relationship and were all ratified by the governmental agency Defendant. The adverse actions, omissions and conduct alleged herein by the Defendant's employees and agents based on MATTIODA's disability, internal complaints, and EEO complaints were continuous and pervasive.

43. As a result of the wrongful actions, omissions and conduct by Defendant, MATTIODA has suffered a deprivation of equal employment opportunities; damages including wage loss, emotional pain, loss of self-esteem, grief, stress, anxiety, stigma, humiliation, mental anguish, and loss of enjoyment of life in an amount to be proven at trial.

WHEREFORE, MATTIODA prays for judgment as set forth below.

### PRAYER

ANDREW MATTIODA prays for judgment as follows:

1. Compensatory damages according to proof, including wage loss, benefits, emotional pain, loss of self-esteem, grief, stress, anxiety, stigma, humiliation, mental anguish, and loss of enjoyment of life in an amount to be proven at trial in an amount of $300,000, exclusive of lost wages;

2. Reasonable attorneys fees pursuant to Section 505(b) of the Rehabilitation Act of 1973, 29 U.S.C. §794a(b) attorneys fees and costs of suit;

4. Pre- and Post- Judgment Interest;

5. Such other and further relief as this court may deem just and proper.

DATED: July 6, 2020

                                                  /s/
                              ADAM S. JURATOVAC, Esq.
                              EMPLOYMENT RIGHTS ATTORNEYS
                              Attorneys for Plaintiff, ANDREW MATTIODA

**DEMAND FOR JURY TRIAL**

MATTIODA demands a trial by jury on all claims alleged herein and via amended pleadings, if any.

DATED: July 6, 2020

                                                  /s/
                              ADAM S. JURATOVAC, Esq.
                              EMPLOYMENT RIGHTS ATTORNEYS
                              Attorneys for Plaintiff, ANDREW MATTIODA